ORIGINAL

STEVEN S. ALM
United States Attorney
District of Hawaii

ELLIOT ENOKI
First Assistant U. S. Attorney

FLORENCE NAKAKUNI
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808)541-2850

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 07 2001

at 2 o'clock and 55 min. Q M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY WAYNE RODRIGUES, (01)<br>ROBIN HAUNANI RODRIGUES<br>  SABATINI, (02)<br><br>Defendants. | CR. NO. ___CR01 00078 SOM<br><br>INDICTMENT<br>[18 U.S.C. §§ 1341, 1347,<br>1956, 2 & 982 and<br>29 U.S.C. § 501(c)] |

INDICTMENT

COUNTS 1-17
(18 U.S.C. § 1341, Mail Fraud)

The Grand Jury charges that:

A.    Introduction

At all times material herein:

1.    GARY WAYNE RODRIGUES, defendant herein, was
the State Director of the United Public Workers, AFSCME, Local
646, AFL-CIO (hereinafter, "UPW") and was an officer and employee
of UPW as defined in the Labor Management Reporting and

Disclosure Act, (hereinafter "LMRDA"), Title 29, United States Code, Sections 402(f) and(n).

2.    ROBIN HAUNANI RODRIGUES SABATINI, defendant herein, was a daughter of GARY WAYNE RODRIGUES and the sole shareholder of Four Winds RSK, Inc., a Hawaii corporation incorporated on February 13, 1996 and Auli'i, Inc., a Hawaii corporation incorporated on March 10, 1998.

3.    The UPW, with its headquarters in Honolulu, Hawaii, was a labor organization engaged in an industry affecting commerce within the meaning of the LMRDA, Title 29, United States Code, Sections 402(i) and 402(j).

4.    UPW was affiliated with and a subordinate body of the American Federation of State, County and Municipal Employees, AFL-CIO (hereinafter "AFSCME").

5.    Membership of UPW consisted of workers primarily working for the State, Counties and Cities of the State of Hawaii.  UPW also had a Private Sector Division which was comprised of workers who worked in private hospitals, nursing homes, and non-profit organizations in the State of Hawaii.

6.    Defendant GARY WAYNE RODRIGUES was a member of the UPW's State Executive Board, which was the governing body of UPW.  As an officer, Executive Board member, agent and representative of UPW, defendant GARY WAYNE RODRIGUES occupied a position of trust in relation to UPW and its members as a group within the meaning of the LMRDA, and had fiduciary duties under Title 29, United States Code, Section 501(a) to:

2

(a) hold UPW's money and property solely for the benefit of UPW and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws and any resolutions of the governing bodies adopted thereunder;

(b) refrain from dealing with UPW as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interest of UPW, and

(c) account to UPW for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of UPW.

7.    Under UPW's bylaws, defendant GARY WAYNE RODRIGUES, as UPW's State Director, had the duty to:

(a) Conduct the affairs of the union in strict accordance with the UPW constitution, the policies of the convention and the State Executive Board and according to his own discretion whenever and wherever it is not expressly limited. The State Director's actions that are not spelled out in the UPW Constitution shall be subject to review and approval by the State Executive Board;

(b) Have custody of and keep all books, records, documents, correspondence and other property of the union;

(c) Keep a complete and accurate record of all properties, transactions, receipts, and disbursements of the union;

3

(d) Be the custodian of all funds of the union and shall deposit such funds to the credit of the union in a federally insured bank or financial institution;

(e) Recommend compensations for all employees under his jurisdiction to the State Executive Board;

(f) Prepare financial reports at least once annually which shall be available for distribution to the members;

(g) Prepare proper vouchers for the disbursement of funds of the union by the Secretary-Treasurer and President signing jointly.

8.   UPW's Constitution states that the State Executive Board of UPW is the governing body between conventions and all decisions on union policy shall be made by the State Executive Board or the President with the approval of the State Executive Board.

9.   UPW's Constitution requires all funds, property and other assets of the local including any separate funded or specifically allocated and reserved funds such as political action committee funds, division, unit, building, emergency, health and welfare, pension, insurance or other benefit programs, or other fund administered by the local shall be deemed held in trust for the benefit of the respectively participating members under the administrative review of the State Executive Board and the convention.  Any payments made must be substantiated by authorizations and documentation meeting the requirements of the AFSCME Financial Standards Code, applicable state and federal

4

laws, and other union  constitutions to which the union is subject.

10.  The AFSCME Financial Standards Code requires that every subordinate body of AFSCME meet the standards set forth in the code. The code sets minimum standards to be met by subordinate bodies in the handling of their funds and other assets and the maintenance of their financial records.

11.  Article V of the AFSCME Financial Code requires that union money can only be spent with proper authorization. Periodic payments to meet contractual obligations, provided that proper advance authorization was obtained from the membership (or delegate assembly) or the executive board, may be made without further authorization. Payments may be authorized by the vote of the membership, executive board, or other delegate assembly as outlined in the Constitution of the subordinate body.

12.  The Hawaii Public Health Fund (hereinafter "Health Fund") was established by the State of Hawaii to provide health and other benefits for public employees, which include UPW members, and their dependants.  Hawaii Revised Statutes allowed public sector unions, including UPW, to offer benefit plans negotiated by the various unions as an alternative to plans offered by the Health Fund.  Hawaii Revised Statutes also provide for the "porting" or transferring of funds from the Health Fund to the unions to pay for the union negotiated plans (hereinafter "employee organization plans").

5

13.  Hawaii Dental Service (hereinafter "HDS") is a Hawaii non-profit corporation providing prepaid dental plans which provide dental coverage for certain  individuals and groups, including UPW.

B.  <u>The Scheme to Defraud</u>

From a time unknown but prior to, and by on or about March 25, 1996 and continuing thereafter to on or about December 21, 1998, in the District of Hawaii and elsewhere, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI, with each aiding and abetting the other, did willfully and knowingly devise a scheme and artifice to defraud UPW and its members and to obtain money and property from UPW and its members by means of false and fraudulent pretenses, representations, promises and omissions.

C.  <u>Manner and Means of the Scheme to Defraud</u>

1.  It was part of said scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, promises and omissions that the defendants sought to defraud:

(a) UPW and its members of their property, that is, money paid out of UPW accounts to HDS ostensibly as premiums for dental benefits which was in excess of the premiums required by HDS to provide the dental benefits to UPW members; and

(b) UPW and its members of their right to the honest services of defendant GARY WAYNE RODRIGUES in the performance of his duties as an officer of UPW.

6

2.   It was part of said scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, promises and omissions that:

(a) defendant GARY WAYNE RODRIGUES failed to expend UPW's money and property in accordance with UPW's constitution and by-laws and the AFSCME Financial Standards Code, in that defendant GARY WAYNE RODRIGUES did not obtain proper authorization from the UPW Executive Board for the disbursements of dental benefit premiums made to HDS by failing to disclose that the UPW premiums were in excess of those required for provision of dental benefits;

(b) defendant GARY WAYNE RODRIGUES failed to hold UPW's money and property solely for the benefit of UPW and its members by causing UPW to pay additional premiums to HDS in excess of the premiums required by HDS to provide the dental benefits to UPW members;

(c) defendant GARY WAYNE RODRIGUES failed to refrain from dealing with UPW as an adverse party and in behalf of HDS as an adverse party in matters related to dental benefit coverage which were connected with his duties as an officer of UPW and thereby held or acquired pecuniary and personal interests which conflicted with the interests of UPW;

(d) defendant GARY WAYNE RODRIGUES failed to account to the UPW for profits he received in connection with the UPW-HDS dental benefits contract which he had negotiated in his capacity as a union officer;

7

(e) defendant GARY WAYNE RODRIGUES breached his duty to hold assets of the UPW which were allocated to dental benefits in trust for the benefit of the respective participating UPW members by causing UPW to pay additional premiums to HDS in excess of the premiums required by HDS to provide the dental benefits to UPW members.

D.    Acts by the Defendants in Furtherance of the Scheme

1.    It was a part of the scheme and artifice to defraud that on or about June 9, 1992, defendant GARY WAYNE RODRIGUES, on behalf of UPW, negotiated a contract with HDS to provide dental benefits for members of UPW.  Defendant GARY WAYNE RODRIGUES also negotiated an "Addendum" to the contract for a consulting fee to be paid to UPW's designated consultant.  The cost of the consulting fee was added to the premium that HDS charged UPW for the dental coverage for its members.

2.    It was further a part of the scheme and artifice to defraud that defendant GARY WAYNE RODRIGUES informed the Executive Board that HDS would be providing dental benefits to UPW members for a specified premium amount but did not disclose the fact that the premiums charged by HDS were inflated to include the consulting fee negotiated by defendant GARY WAYNE RODRIGUES.

3.    It was further a part of the scheme and artifice to defraud that from approximately October 2, 1992 to approximately March 16, 1994, defendant GARY WAYNE RODRIGUES directed HDS to pay the consulting fees to an individual, now

8

deceased, to pay off a personal loan from that individual to defendant GARY WAYNE RODRIGUES.

4.  It was further a part of the scheme and artifice to defraud that defendant GARY WAYNE RODRIGUES did not disclose or account to the Executive Board of UPW or to the membership of UPW that he had directed the payment of consulting fees payable under the UPW-HDS contract to an individual as payment for a personal debt of defendant GARY WAYNE RODRIGUES.

5.  It was further a part of the scheme and artifice to defraud that defendant GARY WAYNE RODRIGUES, in a letter dated March 16, 1994 to HDS, requested that all consultant fees be held by HDS until further notification.

6.  It was further a part of the scheme and artifice to defraud that sometime prior to March 25, 1996, defendant GARY WAYNE RODRIGUES, instructed HDS to pay the consultant fees held by HDS under the UPW contract, to Four Winds RSK, Inc., which was incorporated by defendant GARY WAYNE RODRIGUES'S daughter, defendant ROBIN HAUNANI RODRIGUES SABATINI on February 13, 1996.

7.  It was further a part of the scheme and artifice to defraud that defendant GARY WAYNE RODRIGUES did not disclose to the Executive Board of UPW or to the membership of UPW that he had directed the payment of consulting fees payable under the UPW-HDS contract to his daughter's company.

8.  It was further a part of the scheme and artifice to defraud that defendants GARY WAYNE RODRIGUES and

ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail on approximately March 28, 1996, a check payable to Four Winds RSK for consultant fees in one lump sum of $25,381.19 for the period January 1994 to December 1995, when, in fact, Four Winds RSK, Inc., was not in existence until February, 1996 and could not have and did not perform any consulting work for UPW.

9.    It was further a part of the scheme to defraud that defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail three additional checks in 1996 to Four Winds RSK, Inc., for consultant fees totalling $20,945.26 when, in fact, Four Winds RSK, Inc., performed no consulting work for UPW.

10.    It was further a part of the scheme and artifice to defraud that defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail a total of 4 checks in 1997 to Four Winds RSK, Inc., for consulting fees totalling $45,358.40, when in fact, Four Winds RSK, Inc. performed no consulting work for UPW.

11.    It was further a part of the scheme to defraud that GARY WAYNE RODRIGUES failed to disclose to the Executive Board of UPW and to the UPW members that Four Winds RSK, Inc., or ROBIN HAUNANI RODRIGUES SABATINI, his daughter, received consulting fees, based on the dental benefits contract between HDS and UPW and that no work was performed by Four Winds RSK, Inc., or ROBIN HAUNANI RODRIGUES SABATINI for the consulting fees.

12.    It was further a part of the scheme to
defraud that after the *Honolulu Star-Bulletin*, a daily newspaper
of general circulation in the State of Hawaii, published an
article in January 1998 that the Pacific Group Medical
Association (PGMA), which had been shut down in March, 1997 by
the State of Hawaii Insurance Commissioner, had paid consultant
fees to Four Winds RSK, Inc., incorporated in 1996 by ROBIN
RODRIGUES, the daughter of GARY RODRIGUES, defendant ROBIN
HAUNANI RODRIGUES SABATINI incorporated Auli'i Corporation on
March 10, 1998, using her middle name and married last name,
HAUNANI SABATINI, and thereafter transferred all the assets of
Four Winds RSK, Inc. to Auli'i, Inc.

13.    It was further a part of the scheme and
artifice to defraud that on February 23, 1998, defendant GARY
WAYNE RODRIGUES sent a letter to HDS requesting that HDS pay the
consultant fees to the Voluntary Employees' Benefit Association
of Hawaii (VEBAH) rather than to Four Winds RSK, Inc.  Defendant
GARY WAYNE RODRIGUES was a director of VEBAH from February 26,
1993 to May 22, 1998 when he resigned his position.

14.    It was further a part of the scheme and
artifice to defraud that defendants GARY WAYNE RODRIGUES and
ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail 3 checks for
consultant fees totalling $32,173.21 payable under the UPW-HDS
contract to Management Applied Programming, Inc., (MAP) an

11

affiliate of VEBAH, in 1998, rather than directly to defendant
ROBIN HAUNANI RODRIGUES SABATINI's new corporation, Auli'i, Inc.

15.  It was further a part of the scheme and
artifice to defraud that defendants GARY WAYNE RODRIGUES and
ROBIN HAUNANI RODRIGUES SABATINI caused MAP to mail consultant
fees to Auli'i, Inc. in 1998 totalling $59,093.28 which amount
included consultant fees paid under the UPW-HDS contract.

16.  It was further a part of the scheme and
artifice to defraud that on December 7, 1998, defendant ROBIN
HAUNANI RODRIGUES SABATINI, to make it appear that Aulii, Inc.
was performing consultant work to justify the payment of the
consultant fees, signed a service contract between Auli'i, Inc.
and Management Applied Programming, Inc., (MAP) with an effective
date of July 1, 1998, which required Auli'i Inc. to reconcile UPW
membership, health benefit and payment records pertaining to
UPW's contracts with HDS, Hawaii Medical Services Association
(HMSA) and Kaiser Permanente Medical Care Program for MAP, an
affiliate of VEBAH.

17.  It was further a part of the scheme and
artifice to defraud that on December 11, 1998, GARY WAYNE
RODRIGUES, as UPW's State Director, signed a contract with VEBAH,
with an effective date of July 1, 1998, whereby VEBAH would
provide UPW with consulting services for certain UPW benefit
plans including HDS.

18.  It was further a part of the scheme and
artifice to defraud that the first payment of consultant fees by

MAP to Auli'i, Inc., in the amount of $8,490.91, was dated May 19, 1998, prior to the effective date of the contract.

19.    It was further a part of the scheme and artifice to defraud that defendant ROBIN HAUNANI RODRIGUES SABATINI, to make it appear that Auli'i, Inc. was actually performing consultant work to justify consultant fees from HDS through MAP to Auli'i, Inc., sent to VEBAH "exception reports" approximately 50 to 85 days old, for example, on September 21, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI sent her completed July, 1998 "exception report" and on December 28, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI sent her completed September, 1998 "exception report."

E.    The Mailings

On or about the dates set forth below, within the District of Hawaii, the defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, knowingly and willfully caused checks to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon, as follows with each mailing constituting a separate count of this Indictment:

13

| Count | Date | Mailing |
|---|---|---|
| 1 | March 28, 1996 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $25,381.19 |
| 2 | June 12, 1996 | Check for consulting fees from HDS from Honolulu, HI to Four Winds Kapaa, Kauai, HI, in the amount of $5,868.79 |
| 3 | July 18, 1996 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $8,751.24 |
| 4 | October 31, 1996 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $6,325.23 |
| 5 | March 5, 1997 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $14,014.87 |
| 6 | April 25, 1997 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $10,383.27 |
| 7 | July 29, 1997 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $10,277.75 |
| 8 | October 29, 1997 | Check for consulting fees from HDS from Honolulu, HI to Four Winds, Kapaa, Kauai, HI, in the amount of $10,682.51 |
| 9 | May 14, 1998 | Check for consulting fees from HDS to MAP, in the amount of $13,016.96 |
| 10 | May 19, 1998 | Check for consulting services from MAP to Auli'i, Inc. in the amount of $8,490.91 |

14

| 11 | July 24, 1998 | Check for consulting fees from HDS to MAP, in the amount of $11,465.68 |
| 12 | July 29, 1998 | Check for consulting services from MAP to Auli'i, Inc., in the amount of $5,003.21 |
| 13 | August 28, 1998 | Check for consulting services from MAP to Auli'i, Inc., in the amount of $10,510.70 |
| 14 | October 2, 1998 | Check for consulting services from MAP to Auli'i, Inc. in the amount of $11,717.57 |
| 15 | October 23, 1998 | Check for consulting fees from HDS to MAP, in the amount of $7,690.57 |
| 16 | October 26, 1998 | Check for consulting services from MAP to Auli'i, Inc. in the amount of $11,607.84 |
| 17 | December 15, 1998 | Check for consulting services from MAP to Auli'i, Inc. in the amount of $11,763.05 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 18-20

(29 U.S.C. § 501(c))
(Embezzlement of Labor Organization Assets)

The Grand Jury further charges that:

A.    General Allegations

1.    Paragraphs 1, and 3 through 13 in Section A of Counts 1-17 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

15

B.   Embezzlement Violations

1.   From on or about the following dates, and in the approximate amounts as set forth in tabular form below, in the District of Hawaii, defendant GARY WAYNE RODRIGUES did embezzle, steal, and unlawfully and willfully abstract and convert to his own use and the use of others, the moneys, funds, securities, property and other assets of the UPW, a labor organization engaged in an industry affecting interstate commerce, by causing the UPW, to pay the Hawaii Dental Service the following approximate amounts:

| Count | Date | Amounts |
|-------|------|---------|
| 18 | April 1996 - Dec. 1996 | $29,695 |
| 19 | Jan. 1997 - Dec. 1997 | $33,227 |
| 20 | Jan. 1998 - Dec. 1998 | $34,996 |

All in violation of Title 29, United States Code, Section 501(c).

COUNT 21
(18 U.S.C. § 1347)
(Scheme to Defraud a Health Care Benefit Program)

The Grand Jury further charges that:

A.   General Allegations

1.   Paragraphs 1 through 12 of Section A of Counts 1-17 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.   UPW maintained and administered a medical benefits program which provided medical benefits to UPW members

16

participating in the program and which was a health care benefit

program as defined by Title 18, United States Code, Section 24

(hereinafter referred to as "UPW's health care benefit program").

       3.  Pacific Group Medical Association,

(hereinafter "PGMA"), a Hawaii mutual benefit society, provided

prepaid medical plans to various individuals and groups,

including UPW.  From in or about July, 1995 through approximately

December, 1996 the medical benefits under UPW's health care

benefit program were provided by PGMA through a contract between

UPW and PGMA.

       4.  Pacific Equity Growth & Management, Inc.

(hereinafter "PEGM") provided, by contract, management and

marketing services to PGMA.

      B.  The Scheme to Defraud

       1.  From  on or about August 22, 1996 and

continuing thereafter to on or about December 16, 1996, in the

District of Hawaii and elsewhere, defendants GARY WAYNE RODRIGUES

and ROBIN HAUNANI RODRIGUES SABATINI, did willfully and knowingly

execute and attempt to execute a scheme and artifice to defraud

UPW's health care benefit program and to obtain, by means of

false and fraudulent pretenses, representations and promises,

money and property owned by, and under the custody or control of,

UPW's health care benefit program in connection with the delivery

of, and payment for, health care benefits and services.

C.    Manner and Means of the Scheme and
      Artifice to Defraud

1.    It was part of the said scheme and artifice to defraud that the defendant GARY WAYNE RODRIGUES sought to deprive the UPW health care benefit program and participating UPW members of the right to his honest service in the performance of his duties as an officer of the UPW, including to hold all funds, property and other assets of the UPW, including UPW's specially allocated and reserved health care benefit program funds administered by the union, in trust on behalf of the participating members of the UPW.

2.    It was part of said scheme and artifice to defraud that the defendants sought to defraud UPW's health care benefit program, including the UPW members participating therein, of their right to the honest services of defendant GARY WAYNE RODRIGUES in the performance of his duties as an officer of UPW in connection with the operation of the UPW's health care benefit program and the negotiation of contracts for the provision of benefits under that program.

3.    It was part of said scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, promises and omissions that:

(a) defendant GARY WAYNE RODRIGUES failed to expend UPW's health care benefit program money and property solely for the benefit of UPW and its members and in accordance

18

with UPW's constitution and by-laws and the AFSCME Financial
Standards Code;

(b) defendant GARY WAYNE RODRIGUES failed to
refrain from dealing with UPW as an adverse party and in behalf
of PGMA as an adverse party in matters related to UPW's health
care benefit program and thereby held or acquired pecuniary and
personal interests which conflicted with the interests of UPW;
and

(c) defendant GARY WAYNE RODRIGUES failed to
account to UPW for profits he received in connection with the
UPW-PGMA medical benefits contract which he had negotiated in his
capacity as a union officer.

D.   Acts by the Defendants in Furtherance of the Scheme

1.   It was a part of the scheme and artifice to
defraud that on or about March 21, 1995, defendant GARY WAYNE
RODRIGUES, on behalf of UPW, negotiated a contract with PGMA to
provide medical benefits for members of UPW participating in
UPW's health care benefit program.   Defendant GARY WAYNE
RODRIGUES also negotiated a consulting fee to be paid to UPW's
designated consultant.

2.   It was further a part of the scheme and
artifice to defraud that defendant GARY WAYNE RODRIGUES informed
the Executive Board that he had negotiated a contract with PGMA
to provide medical benefits under UPW's health care benefit plan
but did not disclose to the Executive Board or the UPW membership

19

that PGMA had also agreed to pay a consulting fee, in connection
with the contract, to his daughter's company.

3.  It was further a part of the scheme and
artifice to defraud that defendant GARY WAYNE RODRIGUES directed
PGMA to pay the consulting fees to Four Winds RSK, Inc., which
was owned by defendant GARY WAYNE RODRIGUES's daughter, defendant
ROBIN HAUNANI RODRIGUES SABATINI.

4.  It was further a part of the scheme and
artifice to defraud that defendant GARY WAYNE RODRIGUES failed to
disclose to the Executive Board of UPW and to the UPW members
that Four Winds RSK, Inc., or ROBIN HAUNANI RODRIGUES SABATINI,
his daughter, was paid consulting fees, based on a contract
between PGMA and UPW.

5.  It was further a part of the scheme and
artifice to defraud that on or about April 15, 1996, defendants
GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused
PGMA to send a check from PEGM to Four Winds RSK, Inc., for
consulting fees in the amount of $48,687.68, drawn on American
Savings Bank and issued to Four Winds RSK, Inc.

6.  It was further a part of the scheme and
artifice to defraud that on or about May 15, 1996, defendants
GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused
PGMA to send a check for consulting fees from PEGM to Four Winds
RSK, Inc., for consulting fees in the amount of $6,935.53, drawn
on American Savings Bank and issued to Four Winds RSK, Inc.

7.   It was further a part of the scheme and artifice to defraud that on or about June 14, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $6,967.08, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

8.   It was further a part of the scheme and artifice to defraud that on or about July 15, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $7,216.03, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

9.   It was further a part of the scheme and artifice to defraud that on or about August 22, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $7,191.77, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

10.   It was further a part of the scheme and artifice to defraud that on or about September 16, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

11.   It was further a part of the scheme and artifice to defraud that on or about October 29, 1996, defendants

21

GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

12. It was further a part of the scheme and artifice to defraud that on or about November 22, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $18,025.24, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

13. It was further a part of the scheme and artifice to defraud that on or about December 13, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, for consulting fees in the amount of $17,881.99, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

All in violation of Title 18, United States Code, Section 1347.

<u>COUNT 22</u>
(18 U.S.C.§ 1956(h))
(Money Laundering Conspiracy
as to consultant fees from dental plan)

The Grand Jury further charges that:

A.  <u>General Allegations</u>

1.  Paragraphs 1 to 17 of Section A of Counts 1-17 are hereby realleged and incorporated by reference herein.

22

B.    The Conspiracy

From a time unknown but prior to and by on or about
March 25, 1996 to on or about December 21, 1998, in the District
of Hawaii, and elsewhere, defendants GARY WAYNE RODRIGUES and
ROBIN HAUNANI RODRIGUES SABATINI, did knowingly and intentionally
combine, conspire, confederate and agree with each other and with
other persons known and unknown to the Grand Jury to commit the
following offense against the United States:

1.    To engage in the laundering of monetary
instruments; that is, to knowingly conduct and attempt to conduct
a financial transaction affecting interstate and foreign
commerce, to wit, to deposit into bank accounts checks drawn on
accounts with banks engaged in interstate commerce and insured by
the Federal Deposit Insurance Corporation, which involved the
proceeds of specified unlawful activity, that is, theft from UPW,
a labor organization, knowing that the property involved in the
financial transaction represented the proceeds of some form of
unlawful activity;

(i) and knowing that the transaction was designed
in whole or in part, to conceal and disguise the nature, the
location, the source, the ownership and the control of the
proceeds of specified unlawful activity, in violation of Title
18, United States Code, Section 1956(a)(1)(B)(i).

C.    The Manner and Means of the Conspiracy

1.    In furtherance of the conspiracy, on or about
June 9, 1992, defendant GARY WAYNE RODRIGUES, on behalf of UPW,

23

negotiated a contract with HDS to provide dental benefits for members of UPW. Defendant GARY WAYNE RODRIGUES also negotiated a consulting fee to be paid to UPW's designated consultant. The cost of the fee was added to the premium that HDS charged UPW members.

2. In furtherance of the conspiracy, defendant GARY WAYNE RODRIGUES informed the Executive Board that HDS would be providing dental benefits but failed to disclose the existence of the consulting fee to the Executive Board or the UPW membership.

3. In furtherance of the conspiracy, defendant GARY WAYNE RODRIGUES directed HDS to pay the consulting fees to an individual, now deceased, to pay off a personal loan from that individual to defendant GARY WAYNE RODRIGUES.

4. In furtherance of the conspiracy, defendant GARY WAYNE RODRIGUES, in a letter dated March 16, 1994 to HDS, requested that all consultant fees be held by HDS until further notification.

5. In furtherance of the conspiracy, sometime prior to March 25, 1996, defendant GARY WAYNE RODRIGUES, instructed HDS to pay the consultant fees held by HDS under the UPW contract, to Four Winds RSK, Inc., which was incorporated by defendant GARY WAYNE RODRIGUES'S daughter, ROBIN HAUNANI RODRIGUES SABATINI on February 13, 1996.

6. In furtherance of the conspiracy, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused

24

HDS to mail on or about March 25, 1996, a check payable to Four Winds RSK for consultant fees in one lump sum of $25,381.19 for the period January 1994 to December 1995, when, in fact, Four Winds RSK, Inc., was not in existence until February, 1996 and could not have and did not perform any consulting work for UPW.

7.   In furtherance of the conspiracy, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail three additional checks in 1996 to Four Winds RSK, Inc., for consultant fees totalling $20,945.26 when, in fact, Four Winds RSK, Inc., performed no consulting work for UPW.

8.   On December 2, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI purchased a cashier's check in the amount of $14,213.64 payable to Honolulu Ford with a check drawn on the account of Four Winds RSK, Inc.

9.   On December 3, 1996, defendant GARY WAYNE RODRIGUES purchased a 1997 Ford Ranger truck with the cashier's check purchased by defendant ROBIN HAUNANI RODRIGUES SABATINI on December 2, 1996 and titled the truck in his name.

10.   In calendar year 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI made distributions from her corporate bank account, Four Winds RSK, Inc., to herself and to family members in the amount of approximately $36,600.

11.   In calendar year 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI made distributions from her corporate bank account, Four Winds RSK, Inc., in the amount of approximately $500 to fund her own pension plan.

25

12.   In furtherance of the conspiracy, defendant
GARY WAYNE RODRIGUES failed to disclose to the Executive Board of
UPW and to the UPW members that Four Winds RSK, Inc., or ROBIN
HAUNANI RODRIGUES SABATINI, his daughter, received consulting
fees, based on a contract between HDS and UPW for doing no work.

13.   In furtherance of the conspiracy, defendants
GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused
HDS to mail a total of 4 checks in 1997 to Four Winds RSK, Inc.,
for consulting fees totalling $45,358.40, when in fact, Four
Winds RSK, Inc. performed no consulting work for UPW.

14.   In calendar year 1997, defendant ROBIN
HAUNANI RODRIGUES SABATINI made distributions from her corporate
bank account, Four Winds RSK, Inc., to herself and family members
in the amount of approximately $54,600.

15.   In calendar year 1997, defendant ROBIN
HAUNANI RODRIGUES SABATINI made distributions from her corporate
bank account, Four Winds RSK, Inc., in the amount of
approximately $35,000 to fund her own pension plan.

16.   In furtherance of the conspiracy, after the
*Honolulu Star-Bulletin*, a daily newspaper of general circulation
in the State of Hawaii, published an article in January 1998 that
PGMA, which had been shut down in March, 1997 by the State of
Hawaii Insurance Commissioner, had paid consultant fees to Four
Winds RSK, Inc., incorporated in 1996 by ROBIN RODRIGUES, the
daughter of GARY RODRIGUES, defendant ROBIN HAUNANI RODRIGUES

SABATINI incorporated Auli'i Corporation on March 10, 1998, using her middle name and married last name, HAUNANI SABATINI, and thereafter transferred all the assets of Four Winds RSK, Inc. to Auli'i, Inc.

17. In furtherance of the conspiracy, on February 23, 1998, defendant GARY WAYNE RODRIGUES sent a letter to HDS requesting that HDS pay the consultant fees to VEBAH rather than to Four Winds RSK, Inc. Defendant GARY WAYNE RODRIGUES was a director of VEBAH from February 26, 1993 to May 22, 1998 when he resigned his position.

18. In furtherance of the conspiracy, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused HDS to mail 3 checks for consultant fees totalling $32,173.21 payable under the UPW-HDS contract to MAP, rather than directly to defendant ROBIN HAUNANI RODRIGUES SABATINI's new corporation, Auli'i, Inc.

19. In furtherance of the conspiracy, on December 7, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI, to justify the payment of the consultant fees, signed a service contract between Auli'i, Inc. and MAP with an effective date of July 1, 1998, which required Auli'i Inc. to reconcile UPW membership, health benefit and payment records pertaining to UPW's contracts with HDS, HMSA and Kaiser Permanente Medical Care Program for MAP.

20. In furtherance of the conspiracy, the first payment of consultant fees from MAP to Auli'i, Inc., in the

amount of $8,490.91. was dated May 19, 1998, prior to the effective date of the MAP-Auli'i, Inc. contract.

21.   In furtherance of the conspiracy, on December 11, 1998, defendant GARY WAYNE RODRIGUES, as UPW's State Director, signed a contract with VEBAH, with an effective date of July 1, 1997, whereby VEBAH would provide UPW with consulting services for certain UPW benefit plans including HDS.

22.   In furtherance of the conspiracy, defendant ROBIN HAUNANI RODRIGUES SABATINI, to make it appear that Auli'i, Inc. was actually performing consultant work to justify consultant fees from HDS through MAP to Auli'i, Inc., sent to VEBAH "exception reports" approximately 50 to 85 days old, for example, on September 21, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI sent her completed July, 1998 "exception report" and on December 28, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI sent her completed September, 1998 "exception report."

23.   In furtherance of the conspiracy, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused MAP to mail consultant fees to Auli'i, Inc. in 1998 totalling $59,093.28 which amount included consultant fees paid under the UPW-HDS contract.

24.   In calendar year 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI made distributions from her corporate bank account, Four Winds RSK, Inc., to herself and to a family member in the amount of approximately $10,300.

28

25. In calendar year 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI made distributions from her corporate bank account, Auli'i, Inc., to herself and to a family member in the amount of approximately $23,100.

26. In calendar year 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI made distributions from her corporate bank account, Auli'i, Inc., in the amount of approximately $24,500 to fund her own pension plan.

D.    Overt Acts

To effect the object of the conspiracy, the following overt acts were committed in the district of Hawaii:

1. On April 9, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #27152 dated March 28, 1996 in the amount of $25,381.19 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii, which she opened on April 9, 1996.

2. On June 25, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #27607 dated June 12, 1996 in the amount of $5,868.79 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

3. On July 29, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #27810 dated July 18, 1996 in the amount of $8,751.24 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

4. On November 11, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #28454 dated October 31,

29

1996 in the amount of $6,325.23 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

5.  On December 2, 1996, defendant ROBIN HAUNANI RODRIGUES SABATINI used a check drawn on the First Hawaiian Bank account of Four Winds RSK, Inc. in the amount of $14,213.64 and purchased a First Hawaiian Bank cashier's check in the amount of $14,213.64 made payable to Honolulu Ford.

6.  On December 3, 1996, defendant GARY WAYNE RODRIGUES, purchased and registered a 1997 Ford Ranger truck using the First Hawaiian Bank cashier's check in the amount of $14,213.64.

7.  On March 10, 1997, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #29187 dated March 5, 1997 in the amount of $14,014.87 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

8.  On April 28, 1997, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #29520 dated April 25, 1997 in the amount of $10,383.27 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

9.  On August 1, 1997, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #30010 dated July 29, 1997 in the amount of $10,277.75 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

10.  On November 4, 1997, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited HDS check #30549 dated October 29,

1997 in the amount of $10,682.51 into the savings account #51-906322 of Four Winds RSK, Inc. at First Hawaiian Bank in Hawaii.

11. On May 21, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #3748 dated May 19, 1998 in the amount of $8,490.91 into the savings account #51-907086 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

12. On August 3, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #3885 dated July 29, 1998 in the amount of $5,003.21 into the checking account #51-036077 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

13. On September 9, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #3944 dated August 28, 1998 in the amount of $10,510.70 into the checking account #51-036077 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

14. On October 5, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #4014 dated October 2, 1998 in the amount of $11,717.57 into the checking account #51-036077 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

15. On November 2, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #4045 dated October 26, 1998 in the amount of $11,607.84 into the checking account #51-036077 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

16. On December 21, 1998, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited MAP check #4154 dated December 15, 1998 in the amount of $11,763.05 into the checking account #51-036077 of Auli'i, Inc. at First Hawaiian Bank in Hawaii.

31

All in violation of Title 18, United States Code, Section 1956(h).

COUNTS 23-36
(18 U.S.C. § 1956(a)(1)(B)(i))
(Money Laundering)

The Grand Jury further charges that:

On or about the following dates set forth in tabular form below, in the district of Hawaii, the defendants, GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI, with each aiding and abetting the other, did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, to deposit into bank accounts, checks drawn on accounts with banks engaged in interstate commerce and insured by the Federal Deposit Insurance Corporation, which involved the proceeds of specified unlawful activity, that is, theft from UPW, a labor organization, and that while conducting and attempting to conduct such transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and knew that the transaction was designed in whole or in part, to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit, theft from UPW, a labor organization, in violation of Title 29, United States Code, Section 501(c), with each transaction representing a separate count of this indictment:

32

| Count | Check No. | Date of Check | Amount of Check | Date of Deposit |
|---|---|---|---|---|
| 23 | HDS #27152 | 3/28/96 | $25,381.19 | 4/9/96 |
| 24 | HDS #27607 | 6/12/96 | $ 5,868.79 | 6/25/96 |
| 25 | HDS #27810 | 7/18/96 | $ 8,751.24 | 7/29/96 |
| 26 | HDS #28454 | 10/31/96 | $ 6,325.23 | 11/11/96 |
| 27 | HDS #29187 | 3/5/97 | $14,014.87 | 3/10/97 |
| 28 | HDS #29520 | 4/25/97 | $10,383.27 | 4/28/97 |
| 29 | HDS #30010 | 7/29/97 | $10,277.75 | 8/1/97 |
| 30 | HDS #30549 | 10/29/97 | $10,682.51 | 11/4/97 |
| 31 | MAP #3748 | 5/19/98 | $ 8,490.91 | 5/21/98 |
| 32 | MAP #3885 | 7/29/98 | $ 5,003.21 | 8/3/98 |
| 33 | MAP #3944 | 8/28/98 | $10,510.70 | 9/9/98 |
| 34 | MAP #4014 | 10/2/98 | $11,717.57 | 10/5/98 |
| 35 | MAP #4045 | 10/26/98 | $11,607.84 | 11/2/98 |
| 36 | MAP #4154 | 12/15/98 | $11,763.05 | 12/21/98 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

COUNT 37
(18 U.S.C. § 1956(h))
(Money Laundering Conspiracy as to
Consultant fees from PGMA)

The Grand Jury further charges that:

A.   General Allegations

1.   Paragraphs 1 through 12 of Section A of Counts 1-17 and paragraphs 2-4 of Section A of Count 21 are hereby realleged and incorporated by reference herein.

33

B.   The Conspiracy

From a time unknown but prior to, and by August 22,
1996 to on or about December 13, 1996, in the District of Hawaii,
and elsewhere, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI
RODRIGUES SABATINI, did knowingly and intentionally combine,
conspire, confederate and agree with each other and with other
persons known and unknown to the Grand Jury to commit the
following offense against the United States:

1.   To engage in the laundering of monetary
instruments; that is, to knowingly conduct and attempt to conduct
a financial transaction affecting interstate and foreign
commerce, to wit, to deposit into bank accounts checks drawn on
accounts with banks engaged in interstate commerce and insured by
the Federal Deposit Insurance Corporation, which involved the
proceeds of specified unlawful activity, that is, health care
fraud, knowing that the property involved in the financial
transaction represented the proceeds of some form of unlawful
activity;

(i) and knowing that the transaction was designed
in whole or in part, to conceal and disguise the nature, the
location, the source, the ownership and the control of the
proceeds of specified unlawful activity, in violation of Title
18, United States Code, Section 1956(a)(1)(B)(i).

C.   The Manner and Means of the Conspiracy

1.   It was a part of the conspiracy that on or
about March 21, 1995, defendant GARY WAYNE RODRIGUES, on behalf

34

of UPW, negotiated a contract with PGMA to provide medical
benefits for members of UPW.  Defendant GARY WAYNE RODRIGUES also
negotiated a consulting fee to be paid to UPW's designated
consultant.

     2.  It was further a part of the conspiracy that
defendant GARY WAYNE RODRIGUES informed the Executive Board that
he had negotiated a contract with PGMA to provide medical
benefits under UPW's health care benefit plan but did not
disclose to the Executive Board or the UPW membership that PGMA
had also agreed to pay a consulting fee, in connection with the
contract, to his daughter's company.

     3.  It was further a part of the conspiracy that
Defendant GARY WAYNE RODRIGUES directed PGMA to pay the
consulting fees to Four Winds RSK, Inc., which was owned by
defendant GARY WAYNE RODRIGUES's daughter, defendant ROBIN
HAUNANI RODRIGUES SABATINI.

     4.  It was further a part of the conspiracy that
Defendant GARY WAYNE RODRIGUES failed to disclose to or account
to the Executive Board of UPW and to the UPW members that Four
Winds RSK, Inc., or ROBIN HAUNANI RODRIGUES SABATINI, his
daughter, was paid consulting fees, based on a contract between
PGMA and UPW, when, in fact, defendant ROBIN HAUNANI RODRIGUES
SABATINI and her company, Four Winds RSK, Inc., did not provide
any consulting services for PGMA and UPW.

     5.  It was further a part of the conspiracy that
on April 15, 1996, defendants GARY WAYNE RODRIGUES and ROBIN

HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM
to Four Winds RSK, Inc., for consulting fees in the amount of
$48,687.68, drawn on American Savings Bank and issued to Four
Winds RSK, Inc.

      6. It was further a part of the conspiracy that
on May 15, 1996, defendants GARY WAYNE RODRIGUES and ROBIN
HAUNANI RODRIGUES SABATINI caused PGMA to send a check for
consulting fees from PEGM to Four Winds RSK, Inc., for consulting
fees in the amount of $6,935.53, drawn on American Savings Bank
and issued to Four Winds RSK, Inc.

      7. It was further a part of the conspiracy that
on June 14, 1996, defendants GARY WAYNE RODRIGUES and ROBIN
HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM
to Four Winds RSK, Inc., for consulting fees in the amount of
$6,967.08 drawn on American Savings Bank and issued to Four Winds
RSK, Inc.

      8. It was further a part of the conspiracy that
on July 15, 1996, defendants GARY WAYNE RODRIGUES and ROBIN
HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM
to Four Winds RSK, Inc., for consulting fees in the amount of
$7,216.03, drawn on American Savings Bank and issued to Four
Winds RSK, Inc.

      9. It was further a part of the conspiracy that
on August 22, 1996, defendants GARY WAYNE RODRIGUES and ROBIN
HAUNANI RODRIGUES SABATINI caused PGMA to send a Check from PEGM
to Four Winds RSK, Inc., for consulting fees in the amount of

$7,191.77, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

10.  It was further a part of the conspiracy that on September 16, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

11.  It was further a part of the conspiracy that on October 29, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank and issued to Four Winds RSK, Inc.

12.  It was further a part of the conspiracy that on November 22, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $18,025.24 drawn on American Savings Bank and issued to Four Winds RSK, Inc.

13.  It was further a part of the conspiracy that on December 13, 1996, defendants GARY WAYNE RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI caused PGMA to send a check from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $17,881.99, drawn on American Savings Bank and issued to Four Winds, RSK, Inc.

37

D.    Overt Acts

To effect the object of the conspiracy, the following overt acts were committed in the district of Hawaii:

1.    On April 22, 1996, in the District of Hawaii, Defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #6454, dated April 15, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $48,687.68, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

2.    On May 20, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #6985, dated May 15, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $6,935.53, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

3.    On June 25, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #6600, dated June 14, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $6,967.08, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

4.    On July 29, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #7152, dated July 15, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $7,216.03, drawn on American

38

Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

5.   On September 3, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #7318, dated August 22, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $7,191.77, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

6.   On September 25, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #7426, dated September 16, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

7.   On November 4, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #6876, dated October 29, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $16,728.00, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

8.   On November 27, 1996, in the District of Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited check #7782, dated November 22, 1996, from PEGM to Four Winds RSK, Inc., for consulting fees in the amount of $18,025.24, drawn on American Savings Bank, into Four Winds RSK, Inc.'s savings account #51-906322 at First Hawaiian Bank.

9.   On December 16, 1996, in the District of
Hawaii, defendant ROBIN HAUNANI RODRIGUES SABATINI deposited
check #7865, dated December 13, 1996, from PEGM to Four Winds
RSK, for consulting fees in the amount of $17,881.99, drawn on
American Savings Bank, into Four Winds RSK, Inc.'s savings
account #51-906322 at First Hawaiian Bank.

All in violation of Title 18, United States Code,
Section 1956(h).

COUNTS 38-42
(18 U.S.C. § 1956(a)(1)(B)(i)
Money Laundering)

The Grand Jury further charges that:

On or about the following dates set forth in tabular
form below, in the district of Hawaii, the defendants, GARY WAYNE
RODRIGUES and ROBIN HAUNANI RODRIGUES SABATINI, with each aiding
and abetting the other, did knowingly conduct and attempt to
conduct a financial transaction affecting interstate commerce, to
wit, to deposit into a bank account of Four Winds RSK, Inc.,
checks drawn on an account with a bank engaged in interstate
commerce and insured by the Federal Deposit Insurance
Corporation, which involved the proceeds of specified unlawful
activity, that is, a scheme and artifice to defraud a health care
benefit program, and also that while conducting and attempting to
conduct such transaction, knew that the property involved in the
financial transaction represented the proceeds of some form of
unlawful activity; and knew that the transaction was designed in
whole or in part, to conceal and disguise the nature, the

40

location, the source, the ownership and the control of the
proceeds of specified unlawful activity, to wit, a scheme and
artifice to defraud a health care benefit program, in violation
of Title 18, United States Code, Section 1347, with each
transaction representing a separate count of this indictment:

| Count | Check No. | Date of Check | Amount of Check | Date of Deposit |
|-------|-----------|---------------|-----------------|-----------------|
| 38 | PEGM #7318 | 8/22/96 | $ 7,191.77 | 9/3/96 |
| 39 | PEGM #7426 | 9/16/96 | $16,728.00 | 9/25/96 |
| 40 | PEGM #6876 | 10/29/96 | $16,728.00 | 11/4/96 |
| 41 | PEGM #7782 | 11/22/96 | $18,025.24 | 11/27/96 |
| 42 | PEGM #7865 | 12/13/96 | $17,881.99 | 12/16/96 |

All in violation of Title 18, United States Code,
Sections 1956(a)(1)(B)(i) and 2.

COUNT 43
(18 U.S.C. § 982)

Forfeiture

The Grand Jury further charges that:

A.   Counts 22-36 and Counts 37-42 are hereby realleged
as if fully set out herein.

B.   Upon conviction for the offenses alleged in Counts
22-36 and 37-42, defendants GARY WAYNE RODRIGUES and ROBIN
HAUNANI RODRIGUES SABATINI, shall forfeit to the United States,
pursuant to Title 18, United States Code, Section 982, any and
all property, real or personal, involved in such offenses, or any

41

property traceable to such property, including but not limited to the following:

> The sum of money equal to the sum of
> approximately $200,200

C.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants--

> (1)  cannot be located upon the exercise of due diligence;
>
> (2)  has been transferred or sold to, or deposited with, a third person;
>
> (3)  has been placed beyond the jurisdiction of the court;
>
> (4)  has been substantially diminished in value; or
>
> (5)  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

//

//

//

//

//

//

//

//

42

All pursuant to Title 18, United States Code, Section 982.

Dated: _____7 March 2001_____, at Honolulu, Hawaii.

A TRUE BILL

/s/
_____
FOREPERSON, GRAND JURY


_____
STEVEN S. ALM
United States Attorney
District of Hawaii

_____
ELLIOT ENOKI
First Assistant U.S. Attorney

_____
FLORENCE T. NAKAKUNI
Assistant U.S. Attorney


USA v. Gary Wayne Rodrigues & Robin Haunani Rodrigues Sabatini
"Indictment"
Cr. No. 01-

43