**FILED**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 11 2007

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. GARY WAYNE RODRIGUES, Defendant - Appellant. | No. 03-10549 D.C. No. CR-01-00078-DAE MEMORANDUM* |
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ROBIN HAUNANI RODRIGUES SABATINI, Defendant - Appellant. | No. 04-10027 D.C. No. CR-01-00078-DAE |

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted August 9, 2005
San Francisco, California

Before: PREGERSON, KLEINFELD, and W. FLETCHER, Circuit Judges.

A jury found Gary Rodrigues, the former Hawaii State Director for the United Public Workers union, guilty of embezzling money from the union[1] and accepting kickbacks in connection with an employee welfare benefit plan.[2] The jury also found Rodrigues and his daughter Robin Sabatini guilty of mail fraud,[3] health care fraud,[4] money laundering,[5] and conspiracy to commit money laundering.[6] We affirm the jury's verdict and order a limited Ameline remand.

---

[1] 29 U.S.C. §501(c).

[2] 18 U.S.C. §1954

[3] 18 U.S.C. §1341.

[4] 18 U.S.C. §1347.

[5] 18 U.S.C. §1956(a)(1)(B)(i).

[6] 18 U.S.C. §1956(h).

A. Honest Services Mail Fraud and Honest Services Health Care Fraud.

The defendants argue that: (1) the instruction erroneously failed to require that the government prove a specific misrepresentation or omission made by the defendants as part of the scheme; (2) the instruction did not require that the government prove the defendants acted with an intent to deceive; and (3) the instruction told the jury that honest services included a union official's duties under § 501 of the Labor-Management Reporting and Disclosure Act (LMRDA).

In United States v. Williams, we explained that our court "and other circuits have recognized the viability of the 'intangible rights' theory when the private defendant stands in a fiduciary or trust relationship with the victim of the fraud."[7] Under this theory, the breach or manipulation of the relationship between the actor and the victim satisfies the "fraud" element.[8] Because a "person[] who assume[s] a legal duty of loyalty comparable to that owed by an officer or employee to a

---

[7] United States v. Williams, 441 F.3d 716, 723 (9th Cir. 2006).

[8] United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir. 1980).

private entity" represents that he is acting in the best interest of the principal,[9] to do otherwise (at least without telling the principal) is an act of misrepresentation, or, at least, concealment.[10]

Accordingly, "depriving an employer of one's honest services and of its right to have its business conducted honestly can constitute a 'scheme to defraud' under §1341,"[11] so long as it is done as part of "a recognizable scheme formed with the intent to defraud."[12] No specific false statement, misrepresentation, or omission is necessary if the "scheme [is] reasonably calculated to device."[13] And we analyze this "by a non-technical standard. . . . [S]chemes are condemned

---

[9] See Harold G. Reuschlein & William A. Gregory, Agency and Partnership, at 121, § 67 (1980) ("The term' fiduciary' has never been capable of precise definition. [But] [t]he clear implication . . . is that an agent is under duty to act solely and entirely for the benefit of his principal in every matter connected with his agency."); see also 29 U.S.C. § 501.

[10] Cf. United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir. 1980) ("When a public official is bribed, he is paid for making a decision while purporting to be exercising his independent judgement. The fraud element is therefore satisfied.").

[11] Id. at 1172.

[12] Id. ("Neither breach of a fiduciary duty, nor the receipt of secret profits, then, would suffice standing alone to show a §1341 violation; there must be a recognizable scheme formed with the intent to defraud.").

[13] United States v. Woods, 335 F.3d 993, 998 (9th Cir. 2003) (collecting cases) (concluding that our pre-Neder cases remain good law).

which are contrary to public policy or which fail to measure up to the 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing . . . .'"[14]

The instruction did not omit any required elements.[15] It required the jury to find that the defendant "knowingly devised a scheme or artifice to deprive [the union] and its members of their right to defendant Gary Rodrigues's honest services." And it required the jury to find that the scheme was created "with the intent to deprive [the union] and its members of their right to the honest services of Gary Rodrigues." This sufficiently required some type of intentionally deceitful deprivation.

Additionally, because there is no suggestion that the court misstated Rodrigues's statutory obligations under the LMRDA, and because we agree with the Third Circuit that "the LMRDA established, as a matter of federal law, union

---

[14] Id., quoting United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir. 1980); see also id. ("Courts have relied on this broad interpretation of 'fraud' to hold numerous types of schemes violative of the mail fraud statute.").

[15] We need not decide whether the reasonable foreseeability of harm instruction was correct because the defendant was the one that asked for it.

members' right to the honest and faithful services of union officials,"[16] we approve of the district court's honest services instruction.

### B. Embezzlement of Union Funds.

Rodrigues argues that the indictment failed to state an offense.[17] Because he did not raise this issue below, we review for plain error[18] and "liberally construe the indictment in favor of validity."[19] Because an indictment's purpose is simply to "apprise the defendant with reasonable certainty, of the nature of the accusation against him,"[20] it is acceptable if "the necessary facts appear in any form or by fair

---

[16] United States v. Boffa, 688 F.2d 919, 930-31 (3d Cir. 1982).

[17] See Fed. R. Crim. P. 7(c) (indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged").

[18] See United States v. Cotton, 535 U.S. 625, 630-32 (2002); United States v. Velasco-Medina, 305 F.3d 839, 845-46 (9th Cir. 2002).

[19] United States v. Ross, 206 F.3d 896, 899 (9th Cir. 2000).

[20] Russell v. United States, 369 U.S. 749, 765 (1962).

construction can be found within the terms of the indictment."[21] It should be . . . read as a whole [,] . . . read to include facts which are necessarily implied[,] . . . and . . . construed according to common sense."[22] Moreover, an omission will not cause us to reverse unless "it worked to the prejudice of the accused."[23]

The indictment said that Rodrigues committed embezzlement by causing the union to pay Hawaii Dental Service. And the specific amounts of money in the indictment represented the consultant fee percentage of the monies paid to HDS. It was clear to everyone (the grand jury, the parties, the judge, etc.) what the embezzlement charge was about. The pre-trial correspondence functioned as a bill of particulars, informing the defense that "the specific amounts of money . . . were calculated based on the premiums HDS received from [the union] multiplied by

---

[21] United States v. Velasco-Medina, 305 F.3d 839, 846 (9th Cir. 2002) (quotation omitted). Rodrigues could have but did not ask for a bill of particulars, which is the appropriate recourse for a defendant who truly cannot figure out what the government is claiming he did. See Fed. R. Crim. P. 7(f); United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) ("A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense. . . . It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy. . . .") (citations omitted).

[22] United States v. Buckley, 689 F.2d 893, 899 (9th Cir. 1982).

[23] Id. (quotation omitted).

the negotiated consultant fee amount." That is how the case was presented to the jury. This vitiated any possible prejudice.[24]

We also reject Rodrigues's argument that there was a constructive amendment to the indictment.[25] The constructive amendment doctrine is meant to ensure that a defendant is not convicted for something for which the grand jury did not indict him.[26] Here, however, it was clear to all before trial that the indictment

---

[24] Cf. United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) ("In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government.") (citations omitted).

[25] A constructive amendment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Adamson, 291 F.3d 606, 614 (9th Cir. 2002)

[26] United States v. Adamson, 291 F.3d 606, 614 (9th Cir. 2002) ("The Fifth Amendment guarantees a criminal defendant "[the] right to stand trial only on charges made by a grand jury in its indictment." United States v. Garcia-Paz, 282 F.3d 1212, 1215 (9th Cir.2002). After an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself.").

was based on the sending of money from the union to Hawaii Dental Service to cover consultant fees. [27]

### C. Money Laundering and Conspiracy to Commit Money Laundering.

For the money laundering statute to apply, the charged financial transaction must involve "proceeds of specified unlawful activities . . . ."[28] Defendants concede that mail fraud is a specified unlawful activity. But they say that the monies Sabatini deposited were not "proceeds" of the mail fraud because the fraud was a deprivation of the intangible right to honest services as opposed to a scheme to obtain money or property. Thus, according to them, the mail fraud did not produce "proceeds." We disagree. The "use of the mail" element of mail fraud for which the defendants were convicted was the sending of "consultant fee" checks

---

[27] We also reject the defendant's argument to the extent that he contends that there was no embezzlement because the assets Rodrigues took or caused to be converted were not union assets. The district court correctly explained, the government presented sufficient evidence for the jury to conclude otherwise.

[28] 18 U.S.C. § 1956.

to Sabatini. These checks were "proceeds" of the scheme or artifice to defraud the union.[29]

### E. Kickbacks.

Rodrigues's theory is that he did not violate the statute because the life insurance plan falls under the governmental plan exception to ERISA. He argues that the instruction given on how to determine whether the union plan was a governmental one was erroneous. And he argues that there was insufficient evidence to justify the jury's verdict that the plan was not a governmental one.

Both of Rodrigues's arguments are based on his reading of Silvera v. Mutual Life Insurance Co.,[30] where we concluded that a group benefits insurance policy issued by a private insurance provider to the city should be considered a "governmental plan" even though the "City did not directly fund or underwrite the plan" and "it was [the private provider], not the City, who designed and set up the

---

[29] Accord United States v. Boscarino, 437 F.3d 634, 636 (7th Cir. 2006) ("Boscarino observes that only 'proceeds' can be laundered, and depriving one's employer of honest services need not yield 'proceeds.' That's true enough, but when the offense does create proceeds, which are laundered to hide detection, it is sensible to treat them the same as any other proceeds of mail or wire fraud.").

[30] Silvera v. Mutual Life Ins. Co., 884 F.2d 423 (1989).

plan, administered it on behalf of the employees, and was ultimately liable for the payments of benefits."[31] In Silvera, we used the Department of Labor's regulation on whether a plan is established through the purchase of insurance to analyze whether the city had established a plan. The regulation says that a plan is *not* established if "no contributions are made by an employer or employee organization," if "[p]articipation in the program is completely voluntary for employees," and if "[t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program . . ., to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer."[32] Seizing on the court's comment that "behavior inconsistent with any one the above criteria would constitute evidence of the establishment of a plan,"[33] Rodrigues argues that the government had to show each of these three prongs to meet its burden.

Silvera is distinguishable. It dealt with whether the insurance provider or the insurance purchaser was the entity that established or maintained the plan.

---

[31] Id. at 425-26.

[32] Id. at 426.

[33] Id.

Here, the dispositive question is whether the insurance purchaser (and thus the entity that established and maintained the plan) was the government or the city. And we conclude that the district court's totality of the circumstances formulation of the challenged instruction, considered as a whole, was a reasonable way to guide the jury to make that determination.[34]

We also conclude that there was sufficient evidence to justify the jury's conclusion that the plan was established or maintained by the union, and not the government. Taking the evidence in the light most favorable to the prosecution, we note the following: the government had no role in negotiating the premiums or purchasing the plan; the government allowed its employees to purchase the plan as an alternative to other plans it offered, but did not endorse it over the others; the government only paid 2.5% of the premiums, with the remainder paid by the employees; the government sent its contribution and the employees contribution to

---

[34] Cf. Stuart v. Unum Life Ins. Co. of America, 217 F.3d 1145, 1153 (9th Cir. 2000) ("A program that satisfies the [safe harbor] regulation's standards will be deemed not to have been "established or maintained" by the employer. The converse, however, is not necessarily true; a program that fails to satisfy the regulation's standards is not automatically deemed to have been "established or maintained" by the employer, but, rather, is subject to further evaluation under the conventional tests.") (quoting Johnson v. Watts Regulator Co., 63 F.3d 1129, 1133 (1st Cir. 1995)).

the union, who then sent it on to the insurance provider; the union maintained the payment and enrollment records; and the government only audited the records once in four decades. This meets our low threshold for sufficiency of the evidence challenges.

F. Prejudicial Joinder

Rodrigues argues that all of his convictions should be thrown out because the kickback count (Count 102) should not have been joined to the other 101 counts.[35] Federal Rule of Criminal Procedure 8(a) says that an "indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[36]

---

[35] Rodrigues also argues that, once joined, the count should have been severed pursuant to Federal Rule Criminal Procedure 14. But we decline to address this argument. Rodrigues waived it by not renewing it at the close of evidence. United States v. Terry, 911 F.2d 272, 277 (9th Cir. 1990) ("While it is clear that a Rule 14 motion to sever must be renewed at the close of the evidence or it is waived, . . . there is no such requirement for a Rule 8 motion.").

[36] Fed. R. Crim. P. 8(a).

In United States v. Jawara, we explained that "[s]ame or similar character" cases often present a situation where 'line drawing between permissible and improper joinder . . . becomes imprecise and the standards applied confusing'" and we "endeavor[ed] . . . to fill in some of the blanks."[37] Based on a review of the Jawara factors, initial joinder was appropriate. The offenses charged each involve Rodrigues using his ability to enter contracts on the unions behalf in order to secretly obtain money for himself or the person of his choosing in connection with those contracts. And witnesses who gave testimony on the kickback count offered testimony relevant to some of the other counts.

G. Sentencing

Defendants were sentenced under the pre-Booker mandatory guidelines scheme. They did not make an Apprendi[38] objection at sentencing. The appeal of their sentences is thus controlled by Ameline.[39] Accordingly, we order a limited remand for the sentencing judge to determine whether the he would have imposed the same sentences if he had known the guidelines were advisory.

---

[37] United States v. Jawara, 474 F.3d 565, 576 (9th Cir. 2007).

[38] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[39] United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en banc).

AFFIRMED IN PART AND REMANDED IN PART.