DORON WEINBERG (CA SBN 46131)
WEINBERG & WILDER
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Specially appearing for
ROBIN SABATINI

DENNIS P. RIORDAN (CA SBN 69320)
DONALD M. HORGAN (CA SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorneys for Defendant
ROBIN SABATINI

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR: 01-00078 DAE |
| ) | |
| Plaintiff, ) | **DEFENDANT SABATINI'S** |
| ) | **STATEMENT IN SUPPORT OF** |
| -vs.- ) | **RESENTENCING** |
| ) | |
| GARY W. RODRIGUES and ) | |
| ROBIN HAUNANI RODRIGUES ) | |
| SABATINI, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

   In the fall of 2002, defendant Sabatini was tried on charges of mail fraud and money laundering alleged to have been committed between the years 1995 and 2000. The mail fraud

allegations involved schemes by Ms. Sabatini and her father and co-defendant, Gary Rodrigues, to deprive the UPW, the union Rodrigues headed, of money and the honest services of Rodrigues by the payment to Sabatini of fees from health care companies for consultant work she did not perform. The theory of a deprivation of the money or property of UPW was dismissed from the case as to one scheme (HDS) by the court and dropped by the government as to the other (PGMA); the case therefore proceeded to the jury only on the theory that as to both the HDS and PGMA consultant fees, Rodrigues and Sabatini had schemed to deprive the UPW of Rodrigues' honest services. In November of 2002, Ms. Sabatini was convicted of the mail fraud and money laundering charges.

At the time of Ms. Sabatini's sentencing in December of 2003, the federal sentencing guidelines required that Defendant Sabatini be sentenced under the set of guidelines in effect unless the use of those guidelines would violate the ex post facto clause. U.S..S.G § 1B1.11 (a) and (b)(1). The presentence report concluded that the 2000 guidelines in effect at the time of the charged crimes should be utilized because "the use of those guidelines is more advantageous to the defendant." The presentence report concluded that under the 2000 guidelines the base offense level for a money laundering offense was 20, and that level should be increased by 3 "because the value of the funds laundered totaled $377,503.63." The jury, however, did not make any finding as to the amount of funds laundered in returning their verdicts. The total offense level of 23 yielded a guideline range of 46 to 57 months for Ms. Sabatini.

The district court accepted the findings of the probation report as to the base offense level

and the three level increase due to the amount of funds laundered. It rejected a defense motion for a downward departure on the ground of "aberrant behavior," and imposed on Sabatini a term of imprisonment of 46 months.

On June 11, 2007 a panel of the Ninth Circuit, while affirming the convictions of defendants Rodrigues and Sabatini, ordered "a limited remand for the sentencing judge to determine whether he would have imposed the same sentences if he had known the guidelines were advisory." Order of June 11, 2007, at 14, citing *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). The mandate issued on September 27, 2007.

## THE RELEVANT LAW

The determination of a defendant's sentence is now a fundamentally different process from that in place at the time of Ms. Sabatini's prior sentencing in 2002. In the pre-*Booker* era,[1] the Court engaged in a fairly mechanical application of various guideline provisions to calculate a sentencing range, then considered whether there was a basis for a mitigated or aggravated sentence under the limited and narrowly defined grounds for such departures contained within the sentencing guidelines. Now, following the determination of a guideline calculation that merely serves as a starting point in setting a sentence, the Court must consider the broad range of factors set out in 18 U.S.C. 3553 (a) factors in determining a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

Section 3553(a)(2) states that such purposes are:

---

[1] *United States v. Booker*, 543 U.S. 220 (2005)

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider, *inter alia*, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

*Booker* did far more than effect a mere formal change to the previous federal sentencing regime. As the district court held in *United States v. Ranum*, 353 F.Supp.2d 984 (E.D.Wis. 2005), the change was instead both substantive and far-reaching:

> [C]ourts not imposing sentences within the advisory guideline range should provide an explanation for their decision. But in so doing courts should not follow the old "departure" methodology. The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the "heartland." Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.

*Id*. at 986-87.

The *Ranum* approach has gained widespread acceptance. *See, e.g., United States v.*

*Myers*, 353 F.Supp.2d 1026 (S.D. Iowa 2005) (following *Ranum* on ground that treating guidelines range as presumptively reasonable would render the guidelines mandatory and imposing 3-month period of probation in a gun case rather than 20 to 30 month term corresponding to guideline range); *United States v. Moreland*, 366 F.Supp.2d 416 (S.D.W.Va. 2005) (adopting *Ranum* approach, declining to view guidelines as "presumptively reasonable" after *Booker*, and imposing statutory mandatory minimum of 10 years for drug offense despite fact that advisory guideline sentence was 30 years to life when career-offender guideline provisions were considered, given lack of violence in defendant's record, relatively minor prior drug convictions, and other factors); *United States v. Pacheco-Soto*, 386 F.Supp.2d 1198, 1203 (D.N.M. 2005) (finding *Ranum* approach "compelling" because it "appropriately encourages district courts to abandon a 'fear of judging' outside the confines of the Guidelines"); *United States v. Phelps*, 366 F.Supp.2d 580, 587 (E.D.Tenn. 2005) ("[T]he Court does not believe the advisory Guidelines range should be treated as a starting point or necessarily understood as representing a presumptively reasonable sentence in a given case. The Guidelines are one of a universe of factors pertinent to the Court's sentencing decisions, albeit a significant or substantial factor, and nothing in *Booker* or 18 U.S.C. § 3553(a) operates to make the advisory Guidelines range uniquely primary among those factors."); *Simon v. United States*, 361 F.Supp.2d 35, 40 (E.D.N.Y. 2005) ("Depending on the individual case, giving 'heavy' weight to the Guidelines may . . . be in tension, if not conflict, with § 3553(a)'s command to consider a multitude of factors."); *United States v. Crosby*, 397 F.3d 103, 112-13 (2nd Cir.2005) (district court may impose a sentence within the applicable guideline range, after any clearly applicable departures, if such is consistent with the court's consideration of the § 3553(a) factors, or impose

a non-guideline sentence if such is justified by the § 3553(a) factors.); *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1025 (D.Neb. 2005) (treating the guidelines as presumptively reasonable in every case would circumvent *Booker's* substantive holding and defy the directive that the sentencing court consider the factors in § 3553(a)); *United States v. Milne*, 384 F.Supp.2d 1309, 1313 n.4 (E.D.Wis. 2005) (applying *Ranum* approach, noting that *Booker requires* sentencing courts "to consider any § 3553(a) factor put forward by the defense that might make the guideline sentence inappropriate," and rejecting contention of commentator that "basing the sentence on 'personal culpability' rather than the loss amount is to treat the guidelines 'cavalierly'"); *United States v. Cherry,* 366 F.Supp.2d 372, 378 (E.D.Va. 2005) (citing *Ranum* with approval and noting, "It is clear that this Court cannot simply impose the sentence recommended by the advisory guideline range without offending the remainder of the statutory requirements of § 3553(a).).

## ARGUMENT

In sentencing defendant Sabatini on December 9, 2003, the Court did not endeavor to determine what sentence was sufficient, *but no greater than*, that necessary to meet the objectives of 18 U.S.C section 3553. Rather, at a time when *Booker* was not on the horizon much less firmly planted in the legal landscape, the Court scrupulously followed the then-controlling law under which the federal sentencing guidelines were to be strictly observed in order to severely limit a district court's ability to sculpt a sentence appropriate for a specific defendant. The Court's sentencing discussion reflects a thoroughly mandatory application of specific guidelines. The concepts of reasonableness and discretion are absent from the discussion.

The same is true of the Court's discussion of a possible downward departure, the granting of which was to be quite extraordinary under the guidelines. When considering the issue of "aberrant behavior," the Court carefully applied the very specific and very narrow definition of that term found in the Ninth Circuit's case law. Under that definition, a person who had lived an exemplary life or performed heroic deeds nonetheless would not be eligible for a downward departure if the offense conduct was not spontaneous but rather involved significant planning. Defendant Sabatini does not now fault the Court's reading of the "aberrant behavior" provision of the guidelines, but merely emphasizes that it was an extremely limited ground for mitigation that certainly bestowed no power on the Court to decide in its discretion what the appropriate sentence for her might be.

The result was a guideline determination under which the Court had to impose a sentence of at least 46 months, whether or not Ms. Sabatini was a leader or follower in the charged money laundering offense; whether or not, aside from the charged offense, she had lead a fundamentally admirable or a generally dissolute life; whether her prospects for rehabilitation were bright or dim; and whether a sentence of 46 months was "no greater" than that necessary to achieve the goals stated in section 3553.

There is much before the Court to support the conclusion that the Court would have imposed a shorter sentence had it been free to apply the section 3553 criteria rather than inflexibly calculate the sentence under the then-existing guidelines.

A.   **The Defendant's Character**

In denying the downward departure on the ground of aberrant behavior, the Court stated:

> I think on a human level this is a very sad case. There's no
> question about it. You know, when I listened to the testimony

> about Ms. Sabatini and what she had accomplished on her own, this is before she got involved in this, was really quite a remarkable story and quite an admirable one. I mean she came out of Kauai, she went to community college...It was quite a moving story. I mean she supported herself. She then went back. I guess she came back to Honolulu, she finished, got her four-year degree..She sat for and passed the Certified Public Accountant's examination, which is one of the toughest exams given. That's all to her great credit.

(RT of 12/9/2003, at 33)

The Court's judgment that Ms. Sabatini was a hard working and accomplished person is borne out by those she has been working with and for since her conviction in this case. The Court will surely read the supporting letters that accompany this memorandum in their entirely but they bear extensive quotation. Jerry Whitehead, the chairman of the Tower Design Group, states in part:

> Ms. Sabatini is the Chief Financial Officer, Vice President and key staff person for my firm here in Hawaii and additionally serves as my personal advisor and overseer for two (2) other small firms I own on the mainland and one other I am developing in Hawaii also. Needless to say she has full signing authority for myself and all financial transactions that originate within my business involvements including full access to all funds and transactions – personal and business related.
>
> I state this so you will understand the depth of trust and faith I have in Robin. You should also know I employed her with full understanding of her pending legal issues. I also checked on her background and was and always have been fully satisfied with her character and performance...
>
> In addition to all else, I personally know Robin and many of her extended friends and family. She is not a bad person and I feel terrible that she has through love of people and respect for family, become involved in matters that I don't believe she fully understands...
>
> The bottom line is that Robin is a valued member of this firm and of the State of Hawaii. She also contributes substantially to both the Ohana spirit and her

> community though a variety of means.  I think I could bring you dozens of people that would tell you the same thing.  Robin is one of those caring and loving people who take on every chore to help people.

Eric Kim writes in part:

> I am currently a VP of Business Development, former consultant for a Hawaii developer, former U.S. Postal Service supervisor, former stockbroker and former U.S. Air Force pilot & intelligence officer.  I am on the Board of Directors for the Hawaii Korean Chamber of Commerce, member of the International Council of Shopping Centers and member of the Veteran of Foreign Wars.  I am a product of the University of Hawaii ROTC program and consider myself part of the "Hawaii Kamaaina Come Home Program."
>
> My intention for this letter is to vouch as a character reference for Ms. Robin Sabatini.  I have known Robin for about a year and in this short time have come to know her very well.  I know deep down that she is a genuinely good person and that she possesses the highest standards in her profession as CFO of her firm.  My dealings with Robin have always been cordial and professional and I have the utmost confidence and respect for her.

Herman Chong's letter states in part:

> I am a citizen of the State of Hawaii and for twenty years have worked for the State of Hawaii within facility engineering of Hawaii Health Systems Corporation (HHSC) Kauai Region with the last 8 years being the Regional Facility Director.  In my position one of my responsibilities was to manage, coordinate, and oversee the budget/payment of contracted consultants for design/construction projects.  I respectfully submit this letter to you for your consideration in regards to the upcoming sentencing of Ms. Robin Sabatini.  I hope this letter will help portray a person of character, professionalism and honesty.
>
> I ask that in your sentencing of Ms. Sabatini you consider the good she has done for both TOWER ENGINEERING HAWAII and HHSC while the contract was in effect and that she continues today to do the same as the CFO of TOWER ENGINEERING HAWAII.  I ask you to allow Robin to continue to contribute to the good of the community as her past does not reflect any wrong doings except for what she will be sentenced for.  I truly believe having Ms. Sabatini serve a jail sentence does not contribute anything to the community in which we

> all live in the State of Hawaii.
>
> Your Honor: It is my opinion that this lady is of great value and can effectively and honestly contribute to the positive side of Hawaii.

Thomas Halvorsen, Director of the Western Region of the Academic Capital Group, states that: he has known Robin, her family, and her co-workers for a long time, and she does not have "a bad bone in her body."

> The bottom line is that Robin is a valued member of this community and the State of Hawaii. She also contributes substantially to her community through a variety of means. A great number of people will tell you the same thing. Robin is one of those caring and loving people who would do anything to help people.

.

### B.    Role In The Offense

Although finding that Ms. Sabatini was a knowing and willing participant in the charged schemes, the Court made clear that she was not an equal participant with her father.

> The problem here, of course, is that she did not initiate the conspiracy. She was and became an active and willing participant and a benefactor in it. And that is sad. And it's sad that her father involved her.

(*Id.*, at 37)

> There's no question that I'm convinced beyond any doubt at all of her guilt, but I'm also convinced of the fact that she was, to some limited degree, a victim herself of her father's misconduct....But her father should never have gotten her involved and put the temptation of that in front of her. And that's a shame.

(*Id.*, at 39)

### C.     The Section 3553 Determination

The question now for the Court is whether the 46 month sentence ordered by the Court in 2003 under the mandatory guidelines is the penalty it would have imposed if it had been aware that the guidelines were advisory and that its ultimate task was to determine the sentence sufficient but not greater than that needed to achieve the goals of section 3553.  Defendant submits that the appropriate sentence under section 3553 would have been in the range of twenty months for the following reasons.

First, as stated in the resentencing memorandum submitted by codefendant Rodrigues, under changes to the guideline made in 2001, the guideline level for the money laundering offense in this case would now be twenty rather than the level of twenty three used to calculate Ms. Sabatini's sentence in 2003.  That change was instituted because the sentencing commission concluded that the previous money laundering guidelines were unduly harsh in that they tended to overstate the seriousness of the underlying fraud offenses which served as the necessary predicate for the money laundering charge.  Given that the guidelines can never be binding, the Court is perfectly free to embrace the change in philosophy that underlay the 2001 amendments and thus begin with a guideline level of twenty, with a range of 33 to 41 months, as a point of departure in calculating Ms. Sabatini's sentence.

That said, this Court can be absolutely sure that a sentence well below 33 months will be more than sufficient to deter any further wrongdoing on the part of Ms. Sabatini.  The Court has recognized the highly situational nature of the offenses of which she was convicted.  Everything else in her personal history demonstrates that she would not have been involved in the scheme that led to her conviction but for the powerful influence of her father, who, however much he loved and wished

to benefit his daughter, wound up causing her great harm. Nor can it be doubted that the devastating impact that a twenty month sentence will have on Ms. Sabatini's professional career and personal life will adequately deter others from engaging in similar conduct in the future.

## CONCLUSION

Ms. Sabatini is a very good person who played a lesser role in the commission of a crime. Twenty months of prison in her case will be a penalty sufficient but not greater than that needed to achieve the goals of section 3553.

Dated: October 15, 2007

Respectfully submitted,

DENNIS P. RIORDAN
DONALD M. HORGAN

By  /s/ Dennis P. Riordan
 Dennis P. Riordan
Attorneys for Defendant
ROBIN SABATINI